OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Ede, Admr., Appellant, v. Atrium South OB-GYN, Inc. et al., Appellees.

[Cite as Ede v. Atrium S. OB-GYN, Inc. (1994),      Ohio St.3d      .]

Medical malpractice -- Liability insurance -- Evidence -- Commonality of insurance interests between defendant and expert witness outweighs any potential prejudice evidence of insurance might cause -- Evid.R. 411, applied.

In a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause. (Evid. R. 411, applied.)

(No. 93-1367 -- Submitted September 14, 1994 -- Decided December 14, 1994.)

Appeal from the Court of Appeals for Stark County, No. CA-9041.

This is a medical malpractice/wrongful death action brought by the plaintiff-appellant, Charles Ede, as administrator of the estate of his wife, Sheri Ede, who died on August 28, 1989. The defendants-appellees are George R. Dakoske, M.D., and the corporation of which he is the president, Atrium South OB-GYN, Inc. Dr. Dakoske performed surgery on Sheri Ede on August 24, 1989. Sheri had been scheduled to undergo an abdominal hysterectomy, but during that procedure Dakoske discovered a cancerous tumor on Sheri's right ovary which required further surgery. Sheri died four days later. Appellant alleges that Dakoske's negligent post-operative care caused Sheri's death.

The focus of this appeal is whether the trial court properly precluded appellant from eliciting testimony at trial regarding the commonality of insurance interests between Dakoske and other physicians testifying as experts on Dakoske's behalf. Before trial, Dakoske's counsel had filed a motion in limine, seeking to exclude from the trial any mention of liability insurance, including reference to the fact that Dakoske and other testifying physicians were insured by Physicians' Mutual Insurance Company ("PIE"). Appellant argued that since PIE is a mutual insurance company, each insured's policy is evidence of some fractional

part ownership in PIE.  Appellant argued that PIE-insured medical experts have a built in bias -- less successful malpractice claims means lower premiums charged for malpractice insurance.

At the start of trial, the trial judge made an interim ruling, granting Dakoske's motion in limine "with regard to the specific issue of insurance.* * * I think that the dangers * * * under Rule, ah, 404 and Rule 403 are such that shouldn't -- if you feel that there is some, that it's developed that somehow becomes relevant, I'd ask you to approach the bench and get a ruling on it before you voice questions."  During oral argument on the motion, the trial judge asked Dakoske's counsel whether PIE's insurance rates were related to whether an insured agreed to testify on behalf of another insured.  Dakoske's counsel, reminding the court that he was "a lawyer, not an insurance man," stated that they were not.  The trial judge did not, however, seek to determine whether insurance rates for a particular classification of doctor might be affected by the outcome of a particular case.

At trial, Dr. Martin Schneider, an obstetrician/gynecologist, testified on behalf of Dakoske.  Appellant's cross-examination included questioning regarding Schneider's possible bias.  Appellant established that Dakoske's counsel, Jacobson, Maynard, Tuschman & Kalur, previously had defended Schneider in his own malpractice case, and that Schneider had also testified as an expert in cases defended by the same firm.

Appellant's counsel then sought to establish that Schneider and Dakoske were insured by the same malpractice insurer, PIE, and asked Schneider the following question:

"Have you ever entered into any contractual relationship with any Ohio corporation for which the law firm of Jacobson, Maynard, Tuschman & Kalur provided legal services?"

Dakoske's counsel objected, which objection the trial judge sustained, "for the same reason I grant[ed] the [motion in] limine at the start of the trial."  Appellant's counsel again argued that Schneider had a potential bias and financial interest in the outcome of the case due to the terms of his insurance contract with PIE, and that the matter of insurance may be brought up pursuant to Evid. R. 411 if used to show bias.  The trial judge responded:

"I think that insurance always has some tendency to show certain relevant factors.

"The issue is more appropriately dealt with under Rule 403, as to whether or not the prejudice substantially outweighs the probative value.

"And I, and just so the record is clear on the thing, we had inquiry before and I was told and it was represented that the premium rates for each of those physicians are determined according to their classification and practice and that they would not be affected by whether or not a physician, ah, determined to testify on behalf of the insurance company or didn't."

The trial judge thus precluded appellant from embarking on any questioning relevant to insurance.  A jury returned a verdict in favor of Dakoske and Atrium South, and Ede appealed.  The appellate court affirmed, finding that the trial court's exclusion of the insurance evidence did not amount to an abuse of

discretion.  The appellate court did make clear, however, that admission of the evidence, coupled with a limiting instruction, would likewise not have amounted to an abuse of discretion.  The appellate court noted that "[d]epending upon the directness and scope of the potential pecuniary impact of an adverse award upon the expert witness, admission of this type of evidence upon cross-examination, coupled with the limiting instruction as to its permitted use, would seem to be the preferred choice."

The cause is now before this court pursuant to a motion to certify the record.

The Okey Law Firm, L.P.A., Steven P. Okey and Allen G. Carter, Sr., for appellant.

Fritz Byers; Jacobson, Maynard, Tuschman & Kalur, David M. Best and Janis L. Small, for appellees.

Maloon, Maloon & Barclay Co., L.P.A., and Jeffrey L. Maloon; Zagula, Hill & Dittmar and Nick Dittmar, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.

Pfeifer, J.  Evid. R. 411 states that while evidence of insurance is not admissible upon the issue of liability, the rule "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."

In Beck v. Cianchetti (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417, paragraph one of the syllabus, this court held that Evid. R. 411 allows cross-examination on facts which may show bias, interest, or prejudice of a witness, even though it may disclose the existence of liability insurance in a personal injury action.

This court has also held that "the scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008, syllabus.  In order to constitute reversible error, the limitation on cross-examination by the trial court must be unreasonable, arbitrary, or unconscionable. Calderon, supra, at 222, 24 O.O.3d at 325, 436 N.E.2d at 1012.

The other relevant Rule of Evidence in this case is Evid. R. 403, which states:

"(A) Exclusion mandatory.  Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The trial court in this case pointed to Evid. R. 403 in determining that the issue of the commonality of interests between Drs. Dakoske and Schneider could not be demonstrated through evidence of a common insurance carrier.  The trial court ruled that the danger of prejudice outweighed the probative value of such testimony.  We find that determination to be unreasonable, and therefore reversible error, for two reasons.

First, the trial court did not appreciate the probative value of establishing that Dakoske and Schneider were both insured by PIE.  The trial court focused its inquiry on only one

thing -- whether a doctor's premiums could be raised by PIE if the doctor refused to testify on behalf of another PIE-insured doctor. Thus, the trial court sought to determine whether PIE coerced Schneider's testimony, but did not seem to consider Schneider's personal bias resulting from his insurance relationship. Satisfied by Dakoske's attorney's assurance that Schneider was not being coerced by PIE, the trial court failed to consider other possible biases created by Schneider's relationship with PIE. The trial court was not responsive to appellant's argument that as a fractional part-owner of PIE, Schneider's own premiums might fluctuate due to the result of the case. Such testimony would have been probative of bias.

Second, the trial court erred by grossly overestimating to what extent testimony that Dakoske was insured would prejudice the jury. The second sentence of Evid. R. 411 exists for a reason -- it recognizes that testimony regarding insurance is not always prejudicial. However, too often courts have a Pavlovian response to insurance testimony -- immediately assuming prejudice. It is naive to believe that today's jurors, bombarded for years with information about health care insurance, do not already assume in a malpractice case that the defendant doctor is covered by insurance. The legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations. Our Rules of Evidence are designed with truth and fairness in mind; they do not require that courts should be blind to reality.

Evid. R. 102 sets forth the purpose of the Ohio Rules of Evidence:

"The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. * * * "

Given the sophistication of our juries, the first sentence of Evid. R. 411 ("[e]vidence that a person was or was not insured against liability is not admissible upon the issue of whether he acted negligently or otherwise wrongfully") does not merit the enhanced importance it has been given. Instead of juries knowing the truth about the existence and extent of coverage, they are forced to make assumptions which may have more prejudicial effect than the truth.

Thus, the second sentence of Evid. R. 411, which allows courts to operate in a world free from truth-stifling legal fictions, ought to be embraced. In such instances as the case at hand, truth should win out over a naively inspired fear of prejudice.

Therefore, we hold that in a medical malpractice action, evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice evidence of insurance might cause. Thus, in the present case, the trial court acted unreasonably in excluding evidence regarding the commonality of insurance interests of Drs. Dakoske and Schneider. The judgment of the court of appeals is reversed and the cause is remanded to the trial court for a new trial.

                                    Judgment reversed
                                    and cause remanded.

A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Moyer, C.J., concurs in the syllabus and judgment.

Wright, J., dissents.

Douglas, J., concurring.    I concur with the well-reasoned opinion of the majority.  I write separately to make just two points.  First, interested readers should compare the discussion of Civ.R. 61, in fn. 1 of the dissent, with the discussion of Civ.R. 61 in the dissent of Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d    ,    N.E.2d   .  One cannot have it both ways.

Second, Evid.R. 616 could also be cited in support of the majority opinion.  By its clear terms it would seem to apply.

Wright, J., dissenting.    I would affirm the judgment of the court of appeals because I do not believe that the trial judge abused his discretion in this case.  The trial judge properly considered Evid. R. 403 and 411 in disallowing the line of questioning at issue.  The second sentence of Evid. R. 411 does not require the admission of evidence of insurance for the purpose of showing bias.  It merely states that the exclusion of such evidence is not required.  The trial judge, therefore, properly turned to Evid. R. 403 and determined that the danger of unfair prejudice arising from the jury's knowledge that the defendant had medical malpractice insurance substantially outweighed the probative value of informing the jury of a commonality of insurance interests between the defendant and the defendant's expert witness.

In addition, as discussed below, I believe the majority makes two fundamental errors.  First, the majority's per se rule in the syllabus effectively divests trial judges of their discretion regarding "evidence of a commonality of insurance interests between a defendant and an expert witness."  This view is in direct conflict with the express language of Evid. R. 403 and the syllabus in Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008.  Second, the majority, in essence, has improperly modified the language of Evid. R. 403 and 411 without following the rulemaking procedures required by the Ohio Constitution.1

In the text of the opinion, the majority quite properly recognizes that "the scope of cross-examination of a medical expert on the questions of the expert's bias and pecuniary interest and the admissibility of evidence relating thereto are matters that rest in the sound discretion of the trial court." (Emphasis added.)  Calderon, supra, syllabus.  However, the law contained in Calderon, supra, is at war with the syllabus law announced in this case.  The majority cannot have it both ways, and this court should not indulge itself in an exercise of confusion.

It is well settled that an appellate court may not substitute its judgment for that of a trial court.  As we stated in Calderon, "the question before this court is not whether the trial court ruled as we would have ruled if confronted with these questions, but whether the court abused its discretion so as to prejudice [appellant]."  Id. at 222, 24 O.O.3d at 325, 436 N.E.2d at 1012.  A trial court does not abuse its discretion unless its decision is "unreasonable, arbitrary or unconscionable."  Id. at 220, 24 O.O.3d at 323, 436 N.E.2d at 1010.

Although I might have ruled differently than the trial judge (especially since the judge could have restricted the evidence to

its proper scope through a jury instruction under Evid. R. 105), I cannot say that the trial judge acted unreasonably in this case. We should not say that a trial judge abuses his discretion merely because he "was not responsive" to all of appellant's arguments. As Justice Oliver Wendell Holmes stated: "[M]any honest and sensible judgments *** express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions; -- impressions which may lie beneath consciousness without losing their worth." Chicago, B. & Q. Ry. v. Babcock (1907), 204 U.S. 585, 598, 27 S.Ct. 326, 329, 51 L.Ed. 636, 640.

In applying Evid. R. 403, a trial court must have broad discretion because of the practical problems inherent in the balancing of intangible and indefinable factors, such as unfair prejudice and probative value. The task of assessing potential prejudice is one for which a trial judge, in light of his familiarity with all the evidence in a particular case, is well suited. Unlike reviewing judges who must look at a cold record, a trial judge is in a superior position to evaluate the impact of the evidence because he sees the mannerisms and reactions of the jurors, witnesses, parties, and attorneys.

Although the majority opinion gives lip service to the well-established rule that a reviewing court may not reverse the decision of a trial judge regarding the admissibility of evidence during cross-examination unless the trial judge abuses his discretion, the per se rule found in the syllabus simply ignores this standard. By stating that "evidence of a commonality of insurance interests between a defendant and an expert witness is sufficiently probative of the expert's bias as to clearly outweigh any potential prejudice," the majority divests all trial judges of the discretion conferred upon them by Evid. R. 403 and 611(A). This appears to be result-oriented law run amok.

In essence, the majority has created a new evidence rule in direct conflict with Evid. R. 403 and, in doing so, has circumvented the proper rulemaking procedures required by the Ohio Constitution. Section 5(B), Article IV of the Ohio Constitution, in relevant part, provides: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state ***. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof ***. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval." (Emphasis added.) The majority's new procedure for changing the evidence rules is contrary to law.

For the foregoing reasons, I respectfully dissent.

FOOTNOTE:

1 Perhaps inadvertently, the majority has reversed the judgment of the court of appeals and remanded this cause in violation of Civ. R. 61, which states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court

inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

This means that, in order for a reviewing court to reverse a judgment concerning a matter within a court's discretion, the reviewing court must find not only that an abuse of discretion occurred below, but that such abuse of discretion actually prejudiced the substantial rights of the party seeking reversal. Assuming for the sake of argument that the trial court abused its discretion in this case, I do not believe that the exclusion of "evidence of a commonality of insurance interests" between defendant and defendant's expert witness affected the ultimate outcome of the case so as to prejudice the substantial rights of Ede.

I am puzzled by the suggestion in the concurring opinion that my discussion of Civ.R. 61 in this footnote is somehow inconsistent with the discussion of Civ.R. 61 in my dissent in Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d , N.E.2d .  In both opinions I adhere to the principle that an error must prejudice the substantial rights of the parties in order to constitute reversible error.  A finding of reversible error obviously depends on the unique facts of each case.  In this case, the alleged error did not prejudice the substantial rights of the parties.  In Continental, supra, the error did prejudice the substantial rights of the parties.